# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RICHARD PASSARETTI,** | : | **CIVIL NO. 4:17-CV-1674** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **NANCY BERRYHILL,** | : | |
| **Acting Commissioner of Social** | : | |
| **Security,** | : | |
| | : | |
| **Defendant.** | : | |

## MEMORAUNDUM OPINION

## I.  Introduction

In this case we do not write upon a blank slate. Quite the contrary, this is Richard Passaretti's second Social Security appeal. Passaretti's initial application for disability benefits was denied by an Administrative Law Judge ("ALJ") in August of 2013, and the decision denying benefits to Passaretti was affirmed by the district court in September of 2015. *Passaretti v. Colvin*, No. 3:15-CV-520, 2015 WL 5697510, at *1 (M.D. Pa. Sept. 24, 2015). Thus, this ruling acts as *res judicata* on any disability claims made by Passaretti prior to August of 2013.

Undeterred by this adverse ruling, Passaretti submitted a second disability application, alleging a date of onset for his disability beginning on August 24, 2013, the date of the denial of his prior application. Passaretti's second disability

application was supported by a Medical Questionnaire completed by a treating physician, Dr. Schachter. Given the procedural history of this case, Dr. Schachter's medical statement was problematic on a number of scores. First, that questionnaire was completed as a check block form. In addition, Dr. Schachter alleged that Passaretti's symptoms and limitations had existed since 2009. (Tr. 1213.) Several factors combined to undermine the credibility of this assertion. First, it is undisputed that Passaretti was employed between 2009 and 2011, and earned more than $260,000 during this period. Thus, Dr. Schachter's opinion suggested that Passaretti was disabled at a time when he was, in fact, employed. In addition, Dr. Schachter's opinion, which indicated that Passaretti's disabling conditions had existed since 2009, implicitly rejected what was the law of this case, the previous agency finding, which had been affirmed by this court, that Passaretti was not disabled prior to August of 2013. Indeed, in the course of his initial disability application Passaretti himself had acknowledged that he was not disabled between 2009 and 2011 since he amended the initial alleged date of onset of his disability from 2001 to a date after he stopped working in 2011.

Presented with this second disability application, the ALJ concluded that Passaretti could perform a limited range of sedentary work, and denied this second disability application. In reaching this conclusion the ALJ gave no weight to Dr. Schachter's opinion, which had alleged an onset of disability in 2009, citing the

fact that Passaretti was actually employed from 2009 through 2011 at the same time that the doctor claimed he was wholly disabled. The ALJ's treatment of this medical opinion now forms the basis of the instant appeal, with Passaretti alleging that the ALJ erred in rejecting Dr. Schachter's opinion, and that the Commissioner and the ALJ further compounded this error by failing to consider Passaretti's assertion that the payments he received from his employer over this three-year period consisted of subsidies, and not actual wages.

On appeal, we are now charged with the responsibility of determining whether the ALJ's decision was supported by substantial evidence. *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988); *see also Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S. Ct. 2541, 101 L. Ed. 2d 490 (1988). It is less than a preponderance of the evidence but more than a mere scintilla of proof. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971). Given the deferential standard of review that applies to Social Security appeals, which calls upon us simply to determine whether substantial evidence supports the ALJ's findings, we conclude that substantial evidence exists in this case which justified the ALJ's assessment of Dr. Schachter's opinion and contributed to the

denial of this particular claim. We also conclude that the basis for these determinations was adequately articulated by the ALJ in this decision addressing Passaretti's claim, and that further proceedings for the purpose of investigating whether more than $260,000 in payments received by Passaretti were subsidies rather than wages was not necessary. Therefore, for the reasons set forth below, we will affirm the decision of the Commissioner in this case.

## II.    <u>Statement of Facts</u>

The background of this protracted disability case was aptly summarized by this court in 2015 when it denied Passaretti's first Social Security appeal. "On October 19, 2011, [Passaretti] filed an application for DIB. . . [in which], Plaintiff initially alleged disability beginning on September 11, 2001, due to a number of physical conditions." *Passaretti v. Colvin*, No. 3:15-CV-520, 2015 WL 5697510, at \*1 (M.D. Pa. Sept. 24, 2015). Specifically, "[i]In the November 3, 2011, Disability Report, Plaintiff alleged disability due to autoimmune disorder, hepatitis C, sarcoidosis, gastroenteritis, sleep apnea, neuropathy, diabetes, rheumatoid arthritis, hypertension, WPW (Wolfe–Parkinson–White), asthma, lyme disease, and bronchitis. (R. 186.) Plaintiff originally identified his onset date as September 11, 2001, and later amended it to October 19, 2011." *Id.* at \*1. With respect to this application, the record revealed that:

Plaintiff was born on February 25, 1970. (R. 30.) He was forty-one years old on the alleged disability onset date of October 19, 2011. Plaintiff has a high school education. (R. 49.) In the October 24, 2011, Disability Report, he reported that he stopped working on October 19, 2011, because of his conditions. (R. 186.) Plaintiff has past relevant work as a utility company mechanic aide. (R. 28, 72.) He said that he had worked for Con–Ed in that capacity for twenty-two years and was terminated due to physical restrictions as a result of 9/11. (R. 638.) After he was terminated, Plaintiff collected unemployment compensation benefits.

*Id.* at *2.

On August 23, 2013, the ALJ entered an order denying Passaretti's first disability application. In this decision, the ALJ concluded that Passaretti retained the residual functional capacity to perform a range of light work, and accordingly, concluded at Step 5 of the sequential analysis that applies to disability cases that there were significant jobs which Passaretti could perform. Therefore, the ALJ denied this disability application. *Id*. at *5.

Passaretti appealed this decision, but on September 24, 2015, this court affirmed the judgment of the ALJ denying Passaretti's disability claim. *Passaretti v. Colvin*, No. 3:15-CV-520, 2015 WL 5697510, at *1 (M.D. Pa. Sept. 24, 2015). While this appeal was pending, Passaretti filed a second application for disability insurance benefits pursuant to Title II of the Social Security Act on May 21, 2015. (Tr. 10.) In this second application, Passaretti alleged an onset of disability on August 24, 2013, the date of the denial of his first disability claim. (*Id.*)

With respect to the sole substantive issue raised in this appeal, the ALJ's assessment of the medical opinion evidence submitted by one of Passaretti's treating sources, Dr. Schachter, the pertinent facts can be simply stated.[1] On April 15, 2016 Dr. Schachter submitted a medical questionnaire in this case. (Tr. 1204-14.) This questionnaire was a check block form, and in this questionnaire Dr. Schachter opined that Passaretti was wholly disabled. Notably, the form completed by Dr. Schachter alleged that these symptoms and disabling impairments began in 2009. (Tr. 1213.)

This statement by the doctor was problematic on at least three scores. First, it conflicted with Passaretti's employment history which revealed that he earned $96,845.80 in 2009, $101,377.28 in 2010, and $69,258.16 in 2011, for total earnings of $267,481.14 during this three-year span. (Tr. 131.) Second, this statement was inconsistent with the law of this case, as reflected in the prior *res judicata* finding that Passaretti did not suffer from a disability prior to August of 2013. Finally, this assertion was contradicted by Passaretti himself, who alleged in his initial disability application an onset of disability in October 2011, not 2009 as claimed by Dr. Schachter.

---

[1] Given the protracted nature of these proceedings, it is hardly surprising that the administrative record in this case is now voluminous and comprises more than 1,430 pages. However, since the sole issue raised on appeal relates to the manner in which Dr. Schachter's April 2016 opinion was assessed by the Commissioner, we are limiting our factual discussion to this single issue.

With Dr. Schachter's medical opinion comprising part of the medical record, this case then proceeded to a hearing before an ALJ on June 9, 2016. Following that hearing, on October 4, 2016, the ALJ issued a decision denying Passaretti's second disability application. (Tr. 7-27.) In this decision, the ALJ first found that Passaretti met the insured requirements of the Act through March of 2017. (Tr. 15.) At Step 2 of this sequential analysis, the ALJ found that Passaretti suffered from the following severe impairments—asthma-sarcoidosis, COPD, diabetes, cardiac arrhythmia, Wolff-Parkinson-White syndrome, degenerative disc disease, depression and post-traumatic stress disorder—but concluded at Step 3 that none of these impairments met a listing requirement. (Tr. 15-19.) None of those findings are contested in this appeal.

The ALJ then determined that Passaretti retained the residual functional capacity to perform work at the sedentary level, with some postural limitations, and in a low-stress work environment. (Tr. 20.) In reaching this conclusion regarding Passaretti's capacity for work, the ALJ carefully canvassed the medical opinion and treatment evidence in this case, including Dr. Schachter's April 2016 medical opinion. The ALJ afforded "no weight" to this particular medical opinion, observing that the doctor's claims that Passaretti had been disabled since 2009 were plainly contradicted by the fact that the "claimant was able to work at [a] substantial gainful activity level through 2011." (Tr. 24.)

Following this adverse decision, and in an effort to rehabilitate the opinion of Dr. Schachter, Passaretti submitted a two-page affidavit to the Appeals Council which indicated that his employment with Con Edison from 2009 through 2011 was really in the nature of a subsidy, an unearned benefit which a benevolent employer provided to a disabled worker. (Doc. 12-1.) On July 31, 2017, the Appeals Council rejected this argument by Passaretti and affirmed the decision of the ALJ. (Tr. 1-6.)

This appeal followed. (Doc. 1.) On appeal, Passaretti argues that the ALJ erred in discounting Dr. Schachter's opinion, and that the Commissioner and the ALJ further compounded this error by failing to consider Passaretti's assertion that more than $260,000 in the payments he received from his employer over this three-year period consisted of subsidies, and not actual wages. This case is now fully briefed and is, therefore, ripe for resolution. For the reasons set forth below, given the rationale articulated by the ALJ in this decision, and mindful of the deferential standard of review which applies here, we will affirm the decision of the Commissioner.

## III. <u>Discussion</u>

### A. <u>Evaluation of Social Security Disability Claims</u>

Resolution of the instant Social Security appeal involves an informed consideration of the respective roles of two adjudicators—the ALJ and this court.

At the outset, it is the responsibility of the ALJ in the first instance to determine whether a claimant has met the statutory prerequisites for entitlement to benefits. To receive disability benefits, a claimant must present evidence that demonstrates that the claimant has an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A); 42 U.S.C. §1382c(a)(3)(A); *see also* 20 C.F.R. §§404.1505(a), 416.905(a).

Furthermore,

> [a]n individual shall be determined to be under a disability only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he [or she] lives, or whether a specific job vacancy exists for his [or her], or whether he [or she] would be hired if he [or she] applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A); 42 U.S.C. §1382c(a)(3)(B); *see also* 20 C.F.R. §§404.1505(a), 416.905(a). Finally, to qualify for benefits under Title II of the Social Security Act, a claimant must also show that he or she contributed to the

insurance program and became disabled prior to the date on which he or she was last insured. 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

In making this determination the ALJ employs a five-step evaluation process to determine if a person is eligible for disability benefits. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999). If the ALJ finds that a claimant is disabled or not disabled at any point in the sequence, review does not proceed any further. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). As part of this analysis the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; and (3) whether the claimant's impairment meets or equals a listed impairment.

Once the ALJ completes this Step 3 analysis, at Steps 4 and 5 of this sequential analysis the ALJ must determine whether the claimant's impairment prevents the claimant from doing past relevant work; and whether the claimant's impairment prevents the claimant from doing any other work. *Id.* Before considering Step 4 in this process, the ALJ must also determine the claimant's residual functional capacity, or RFC. 20 C.F.R. §§ 404.1520(e), 416.920(e). RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); *see also* 20 C.F.R. §§ 404.1545, 416.945. In

making this assessment, the ALJ considers all of the claimant's impairments, including any medically determinable nonsevere impairments. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2).

There is an undeniable medical aspect to an RFC determination, since that determination entails an assessment of what work the claimant can do given the physical limitations that he experiences. Yet, when considering the role and necessity of medical opinion evidence in making this determination, courts have followed several different paths. Some courts emphasize the importance of medical opinion support for an RFC determination and have suggested that "[r]arely can a decision be made regarding a claimant's residual functional capacity without an assessment from a physician regarding the functional abilities of the claimant." *Biller v. Acting Comm'r of Soc. Sec.,* 962 F. Supp. 2d 761, 778–79 (W.D. Pa. 2013) (quoting *Gormont v. Astrue,* Civ. No. 11–2145, 2013 WL 791455 at *7 (M.D. Pa. Mar. 4, 2013)). In other instances, it has been held that: "There is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." *Titterington v. Barnhart*, 174 F. App'x 6, 11 (3d Cir. 2006). Further, courts have held in cases where there is no evidence of any credible medical opinion supporting a claimant's allegations of disability that "the proposition that an ALJ must always base his RFC on a medical opinion from a

physician is misguided." *Cummings v. Colvin*, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015).

These seemingly discordant legal propositions can be reconciled by evaluation of the factual context of these decisions. Those cases which emphasize the importance of medical opinion support for an RFC assessment typically arise in a factual setting where a factually-supported and well-reasoned medical source opinion regarding limitations that would support a disability claim is rejected by an ALJ based solely upon a lay assessment of other evidence by the ALJ. In contrast, where an ALJ fashions an RFC determination on a sparse factual record, in the absence of any competent medical opinion evidence, or by carefully evaluating multiple pieces of clinical and opinion evidence, courts have adopted a more pragmatic view and have sustained the ALJ's exercise of independent judgment based upon all of the facts and evidence. *See Titterington v. Barnhart*, 174 F. App'x 6, 11 (3d Cir. 2006); *Cummings v. Colvin*, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015). In either event, once the ALJ has made this determination, our review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence. *Burns v. Barnhart,* 312 F.3d 113, 129 (3d Cir. 2002); *see, e.g., Metzger v. Berryhill*, No. 3:16-CV-1929, 2017 WL 1483328, at *5 (M.D. Pa. Mar. 29, 2017), *report and recommendation adopted sub nom. Metzgar v. Colvin,* No. 3:16-CV-1929, 2017

WL 1479426 (M.D. Pa. Apr. 21, 2017); *Rathbun v. Berryhill*, No. 3:17-CV-00301, 2018 WL 1514383, at *6 (M.D. Pa. Mar. 12, 2018), *report and recommendation adopted,* No. 3:17-CV-301, 2018 WL 1479366 (M.D. Pa. Mar. 27, 2018).

At Steps 1 through 4, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her from engaging in any of his or her past relevant work. 42 U.S.C. §1382c(a)(3)(H)(i)(incorporating 42 U.S.C. §423(d)(5) by reference); 20 C.F.R. §416.912; *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). Once the claimant has met this burden, the burden then shifts to the Commissioner at Step 5 to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC. 20 C.F.R. §416.912(f); *Mason,* 994 F.2d at 1064.

The ALJ's disability determination must also meet certain basic procedural and substantive requirements. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected,

and the reasons for rejecting certain evidence. *Id.* at 706-707. In addition, "[t]he ALJ must indicate in his decision which evidence he [or she] has rejected and which he [or she] is relying on as the basis for his [or her] finding." *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 433 (3d Cir. 1999). In short, an ALJ's disability determination must also adequately explain the legal and factual basis for this disability determination. This burden of articulation applies with particular force to all aspects of an ALJ's assessment and evaluation of what is often conflicting evidence. Thus, "[w]hen a conflict in the evidence exists, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'" *Plummer v. Apfel,* 186 F.3d 422, 429 (3d Cir. 1999) (quoting *Mason v. Shalala,* 994 F.2d 1058, 1066 (3d Cir. 1993)).

## B.    <u>Judicial Review of ALJ Determinations – Standard of Review</u>

Once the ALJ has made a disability determination, it is then the responsibility of this Court to independently review that finding. In undertaking this task, this Court applies a specific, well-settled and carefully articulated standard of review. In an action under 42 U.S.C. § 405(g) or 42 U.S.C. §1383(c)(3) to review the decision of the Commissioner of Social Security denying a claim for disability benefits, the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]" 42 U.S.C. § 405(g).

The "substantial evidence" standard of review prescribed by statute is a deferential standard of review. *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004). When reviewing the denial of disability benefits, we must simply determine whether the denial is supported by substantial evidence. *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988); *see also Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S. Ct. 2541, 101 L. Ed. 2d 490 (1988). It is less than a preponderance of the evidence but more than a mere scintilla of proof. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Plummer*, 186 F.3d at 427 (quoting *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995)).

A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason*, 994 F.2d at 1064. However, in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the decision] from being supported by substantial evidence." *Consolo v.*

*Federal Maritime Comm'n*, 383 U.S. 607, 620, 86 S. Ct. 1018, 16 L. Ed. 2d 131 (1966). In determining if the ALJ's decision is supported by substantial evidence the court may not parse the record but rather must scrutinize the record as a whole. *Smith v. Califano*, 637 F.2d 968, 970 (3d Cir. 1981); *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). The question before this Court, therefore, is not whether a claimant is disabled, but whether the Commissioner's finding that he was not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 U.S. Dist. LEXIS 31292, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012) ("[T]he court has plenary review of all legal issues . . . .").

Several fundamental legal propositions flow from this deferential standard of review. First, when conducting this review "we are mindful that we must not substitute our own judgment for that of the fact finder." *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014) (citing *Rutherford,* 399 F.3d at 552). Thus, we are

enjoined to refrain from trying to re-weigh the evidence. Rather our task is to simply determine whether substantial evidence supported the ALJ's findings. However, we must also ascertain whether the ALJ's decision meets the burden of articulation demanded by the courts to enable informed judicial review. Simply put, "this Court requires the ALJ to set forth the reasons for his decision." *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 119 (3d Cir. 2000). As the court of appeals has noted on this score:

> In *Burnett,* we held that an ALJ must clearly set forth the reasons for his decision. 220 F.3d at 119. Conclusory statements . . . are insufficient. The ALJ must provide a "discussion of the evidence" and an "explanation of reasoning" for his conclusion sufficient to enable meaningful judicial review. *Id.* at 120; *see Jones v. Barnhart,* 364 F.3d 501, 505 & n. 3 (3d Cir. 2004). The ALJ, of course, need not employ particular "magic" words: "*Burnett* does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis." *Jones,* 364 F.3d at 505.

*Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009).

Thus, in practice ours is a twofold task. We must evaluate the substance of the ALJ's decision under a deferential standard of review, but we must also give that decision careful scrutiny to ensure that the rationale for the ALJ's actions is sufficiently articulated to permit meaningful judicial review.

### C. <u>Legal Benchmarks for the ALJ's Assessment of Medical Treatment and Opinion Evidence</u>

The Commissioner's regulations also set standards for the evaluation of medical evidence, and define medical opinions as "statements from physicians and

psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [a claimant's] symptoms, diagnosis and prognosis, what [a claimant] can still do despite impairments(s), and [a claimant's] physical or mental restrictions." 20 C.F.R. §404.1527(a)(2). Regardless of its source, the ALJ is required to evaluate every medical opinion received. 20 C.F.R. §404.1527(c).

In deciding what weight to accord to competing medical opinions and evidence, the ALJ is guided by factors outlined in 20 C.F.R. §404.1527(c). "The regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker." SSR 96-6p, 1996 WL 374180 at *2. Treating sources have the closest ties to the claimant, and therefore their opinions generally entitled to more weight. See 20 C.F.R. §404.1527(c)(2) ("Generally, we give more weight to opinions from your treating sources..."); 20 C.F.R. §404.1502 (defining treating source). Under some circumstances, the medical opinion of a treating source may even be entitled to controlling weight. 20 C.F.R. §§04.1527(c)(2); *see also* SSR 96-2p, 1996 WL 374188 (explaining that controlling weight may be given to a treating source's medical opinion only where it is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and it is not inconsistent with the other substantial evidence in the case record).

Where no medical source opinion is entitled to controlling weight, the Commissioner's regulations direct the ALJ to consider the following factors, where applicable, in deciding the weight given to any non-controlling medical opinions: length of the treatment relationship and frequency of examination; nature and extent of the treatment relationship; the extent to which the source presented relevant evidence to support his or her medical opinion, and the extent to which the basis for the source's conclusions were explained; the extent to which the source's opinion is consistent with the record as a whole; whether the source is a specialist; and, any other factors brought to the ALJ's attention. 20 C.F.R. §404.1527(c).

Furthermore, as discussed above, it is beyond dispute that, in a Social Security disability case, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." *Cotter,* 642 F.2d at 704. This principle applies with particular force to the opinions and treating records of various medical sources. As to these medical opinions and records: "Where a conflict in the evidence exists, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or the wrong reason.'" *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) (quoting *Mason*, 994 F.2d at 1066)); *see also Morales v. Apfel,* 225 F.3d 310, 317 (3d Cir. 2000).

Oftentimes, as in this case, an ALJ must evaluate medical opinions and records tendered by both treating and non-treating sources. Judicial review of this

aspect of ALJ decision-making is guided by several settled legal tenets. First, when presented with a disputed factual record, it is well-established that "[t]he ALJ – not treating or examining physicians or State agency consultants – must make the ultimate disability and RFC determinations." *Chandler v. Comm'r of Soc. Sec.,* 667 F.3d 356, 361 (3d Cir. 2011) . Thus, "[w]here . . . the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'" *Morales v. Apfel,* 225 F.3d 310, 317 (3d Cir. 2000). Therefore, provided that the decision is accompanied by an adequate, articulated rationale, it is the province and the duty of the ALJ to choose which medical opinions and evidence deserve greater weight.

In making this assessment of medical evidence:

An ALJ is [also] entitled generally to credit parts of an opinion without crediting the entire opinion. *See Thackara v. Colvin,* No. 1:14–CV–00158–GBC, 2015 WL 1295956, at *5 (M.D.Pa. Mar. 23, 2015); *Turner v. Colvin,* 964 F.Supp.2d 21, 29 (D.D.C.2013) (agreeing that "SSR 96–2p does not prohibit the ALJ from crediting some parts of a treating source's opinion and rejecting other portions"); *Connors v. Astrue,* No. 10–CV–197–PB, 2011 WL 2359055, at *9 (D.N.H. June 10, 2011). It follows that an ALJ can give partial credit to all medical opinions and can formulate an RFC based on different parts from the different medical opinions. *See e.g., Thackara v. Colvin,* No. 1:14–CV–00158–GBC, 2015 WL 1295956, at *5 (M.D.Pa. Mar. 23, 2015).

*Durden v. Colvin*, 191 F. Supp. 3d 429, 455 (M.D. Pa. 2016).

### D.  The ALJ's Decision in This Case is Supported By Substantial Evidence

In this case we are mindful that our review of the ALJ's decision is limited to determining whether the findings of the ALJ are supported by substantial evidence in the record. *See* 42 U.S.C. §405(g); 42 U.S.C. §1383(c)(3); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). In this context, substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion;" *Pierce v. Underwood,* 487 U.S. 552, 565 (1988), and substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

Guided by these legal benchmarks we find that substantial evidence supported the ALJ's decision to discount the medical opinion offered by Dr. Schachter. As we have noted, Dr. Schachter's opinion was offered through a check block form. On this score, it is well settled that: "[f]orm reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best." *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993). Further, the strength of this otherwise weak evidence was further significantly eroded by the fact that Dr. Schachter's assertion that Passaretti was totally disabled since 2009 was contradicted in no less than three different ways: First, this assertion conflicted

with Passaretti's employment history which revealed that he earned $96,845.80 in 2009, $101,377.28 in 2010, and $69,258.16 in 2011, for total earnings of $267,481.14 during this three-year span. (Tr. 131.) Second, this statement was inconsistent with the law of this case, as reflected in the prior *res judicata* finding that Passaretti did not suffer from a disability prior to August of 2013. Finally, this assertion was contradicted by Passaretti himself, who alleged in his initial disability application an onset of disability in October 2011, not 2009 as claimed by Dr. Schachter. In fact, when rejecting this medical opinion the ALJ found that the doctor's claims that Passaretti had been disabled since 2009 were plainly contradicted by the fact that the "claimant was able to work at [a] substantial gainful activity level through 2011." (Tr. 24.)

As a legal matter it is clear that the ALJ is entitled, and in fact is required, to make such judgments when evaluating medical opinion evidence. *See, e.g., Durden v. Colvin*, 191 F. Supp. 3d 429, 455 (M.D. Pa. 2016); *Thackara v. Colvin,* No. 1:14–CV–00158–GBC, 2015 WL 1295956, at *5 (M.D. Pa. Mar. 23, 2015). Moreover, in this case the ALJ's decision to discount Dr. Schachter's opinion, which asserted that Passaretti was disabled at a time when he earned $267,000, drew support from substantial evidence in the record. Furthermore, the ALJ's decision clearly articulated the basis for this credibility determination which

rejected Dr. Schachter's opinion. Therefore, this judgment may not now be disturbed on appeal.

Nonetheless, Passaretti argues that the ALJ's analysis was inadequate because it did not take into account the notion that Passaretti's payments from his employer between 2009 and 2011 may have been more in the nature of a subsidy, rather than wages. Viewing these payments as a subsidy, Passaretti argues that receipt of this money by the plaintiff would not have undermined the doctor's credibility. According to Passaretti, the Commissioner should have accepted this claim by Passaretti, or at a minimum should have conducted further evidentiary proceedings relating to the issue of whether Passaretti received a $260,000 subsidy from his employer.

We disagree.

At the outset, we note that Passaretti's argument, which is premised on the idea that the ALJ erred in failing to recognize these payments—which exceeded $260,000—as subsidies rather than wages, fundamentally misconstrues what subsidies are for purposes of a Social Security disability adjudication. A "subsidy" has a specific and narrow meaning in this context. "An employer may, because of a benevolent attitude toward a handicapped individual, subsidize the employee's earnings by paying more in wages than the reasonable value of the actual services performed. When this occurs, the excess will be regarded as a subsidy rather than

earnings." Titles II & XVI: Determining Whether Work Is Substantial Gainful Activity-Employees, SSR 83-33, 1983 WL 31255 at *3. Thus, a finding that payments constituted a subsidy requires a showing that the payments were motivated by an employer's benevolence to a handicapped worker. A subsidy is not a wholly elastic concept that can embrace any and all outside income an employee receives. Recognizing the fundamentally benevolent quality of any employer subsidies, in practice the amount of subsidies received by a worker have typically been measured in hundreds or thousands of dollars, but not in an amount exceeding $200,000, as claimed here by Passaretti.

Passaretti's argument that a remand is necessary here to further explore whether these payments constituted a subsidy fails for several reasons. First, the sheer dimensions of the claimed subsidy justify the ALJ's decision to decline to conduct further investigation into this question. During the years at issue in this case when Passaretti was being paid by Consolidated Edison, the threshold beyond which moneys were considered wages and substantial gainful activity instead of some form of subsidy was $11,760 in 2009 and $12,000 in 2010 and 2011. Accordingly, the total threshold below which Passaretti's receipt of money would be presumed not to amount to substantial gainful activity would have been $35,760 from 2009 to 2011. Yet, Passaretti's aggregate income from Consolidated Edison during this same time frame was $267,481.14. Therefore, in order to accept

Passaretti's argument that the payments he received were a subsidy and not earned wages, the ALJ would have had to have determined that more than 86% of the moneys Passaretti received from Con-Ed over the span of three years were paid "because of a benevolent attitude toward a handicapped individual, subsidize the employee's earnings by paying more in wages than the reasonable value of the actual services performed." SSR 83-33, 1983 WL 31255 at *3. This assertion blinks reality and, in fact, cases which have found that moneys received by a claimant were subsidies instead of wages, generally have involved sums which only slightly exceeded the $12,000 threshold for substantial gainful activity. *See, e.g., Chancellor v. Berryhill,* No. 17-CV-00609-MSK, 2018 WL 1026866, at *6 (D. Colo. Feb. 22, 2018) ($16,000 *held* subsidy); *Burnside v. Berryhill*, No. 2:17-CV-01329, 2017 WL 5710460, at *5 (S.D.W. Va. Oct. 30, 2017), *report and recommendation adopted,* No. 2:17-CV-01329, 2017 WL 5707543 (S.D.W. Va. Nov. 27, 2017) (half-pay given to part-time pastor for five months following heart attack *held* subsidy). Passaretti cites to no legal authority which supports his position that 86% of a worker's income over three years, or more than $231,000, should be considered a subsidy rather than wages and we have found no legal supported for this very elastic view of what constitutes a subsidy. Therefore, we conclude that the ALJ did not err in resolving this issue without further evidentiary inquiry.

Furthermore, Passaretti's argument ignores the fact that the characterization of what constitutes a subsidy; that is, payments reflecting an employer's benevolent attitude toward a handicapped worker, should be made by the employer, and not the employee. In fact, where the evidence that an employer's payments constituted a subsidy consists largely of the claimant's own assertions, courts have typically discounted such claims. *See Smith v. Colvin*, No. CV 15-5135, 2017 WL 744572, at *11 (E.D. La. Feb. 3, 2017), *report and recommendation adopted sub nom. Smith v. Soc. Sec. Admin.*, No. CV 15-5135, 2017 WL 736041 (E.D. La. Feb. 24, 2017). This principle applies here and is fatal to Passaretti's argument that the ALJ erred in failing to view these payments as a subsidy. In this case, the only proof that Passaretti tenders in support of this subsidy claim is his own declaration, a form of proof which is simply insufficient to carry the plaintiff's burden of proof and persuasion on this issue.

Nor does this belated submission by Passaretti asserting that he received a $267,000 subsidy from Con Ed justify a new evidence remand in this case. 42 U.S.C. § 405(g) provides that: "The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding."

In exercising this authority, the United States Court of Appeals for the Third Circuit has emphasized that a claimant seeking remand on the basis of new evidence must demonstrate that the additional evidence is both new and material, and that the claimant had good cause for not submitting the evidence to the ALJ for his initial review. *Szubak v. Sec'y of Health and Human Servs.,* 745 F.2d 831, 833 (3d Cir. 1984). Where such criteria are met, the district court may enter what is colloquially referred to as a "sentence six" remand pursuant to the sixth sentence of 42 U.S.C. § 405(g).

In order for a claimant to prevail on a request for a sentence six remand, the evidence to be considered must first truly be "new evidence" and "not merely cumulative of what is already in the record." *Szubak*, 745 F.2d at 833. Second, the evidence must be "material," meaning that it must be "relevant and probative." *Id.* In making this determination,

> the materiality standard of § 405(g) requires "that there be a reasonable possibility that the new evidence would have changed the outcome of the Secretary's determination." *Id. See also Booz v. Secretary of Health and Human Services,* 734 F.2d 1378, 1381 (9th Cir. 1984); *Dorsey v. Heckler,* 702 F.2d 597, 604–05 (5th Cir. 1983); *Chaney v. Schweiker,* 659 F.2d 676, 679 (5th Cir. 1981). Thus, to secure remand, a claimant must show that new evidence raises a "reasonable possibility" of reversal sufficient to undermine confidence in the prior decision. The burden of such a showing is not great. A "reasonable possibility," while requiring more than a minimal showing, need not meet a preponderance test. Instead, it is adequate if

the new evidence is material and there is a reasonable possibility that
it is sufficient to warrant a different outcome.

*Newhouse v. Heckler,* 753 F.2d 283, 287 (3d Cir. 1985). Further, "[a]n implicit

materiality requirement is that the new evidence relate to the time period for which

benefits were denied . . . ." *Szubak*, 745 F.2d at 833 (citing *Ward v. Schweiker,* 686

F.2d 762, 765 (9th Cir. 1982)).

In practice,

 [f]our factors must be considered pursuant to this requirement. *See, e.g., Newhouse v. Heckler,* 753 F.2d 283, 287 (3d Cir. 1985). First, the evidence must be new and not merely cumulative of what is already in the record. *Id.* at 287. Second, the evidence must be material, relevant and probative. *Id.* Third, there must exist a reasonable probability that the new evidence would have caused the Commissioner to reach a different conclusion. *Id.* Fourth, the claimant must show good cause as to why the evidence was not incorporated into the earlier administrative record. *Id.*

*Scatorchia v. Comm'r of Soc. Sec.,* 137 F. App'x 468, 472 (3d Cir. 2005).

Judged by these guideposts, Passaretti's new evidence remand argument

fails because this information relating to the substantial earnings he received from

2009 through 2011, was not in any sense new. Rather, the receipt of this money by

Passaretti had been known by the claimant for many years. In addition, since these

$267,000 payments are not reasonably susceptible of an interpretation as a

benevolent subsidy from his employer, this evidence cannot be seen as material to

the disability determination in this case. Furthermore, given the fact that

Passaretti's claim related to the period beginning in August 2013, and this employment evidence was merely a factor considered by the ALJ in assessing the credibility of Dr. Schachter's disability report, it is doubtful that this would be deemed material under §405(g) since the evidence did not directly "relate to the time period for which benefits were denied. . . ." *Szubak*, 745 F.2d at 833 (citing *Ward,* 686 F.2d at 765. Since Passaretti's submission did not meet the exacting legal standards justifying a new evidence remand, the plaintiff is not entitled to this extraordinary relief in this case.

Finally, we conclude that any failure by the Commissioner to further consider this subsidy question would be harmless error on the unique facts of this case, where Dr. Schachter's opinion was fatally flawed in a number of respects. In Social Security appeals courts may also apply harmless error analysis when assessing the sufficiency of an ALJ's decision. *Seaman v. Soc. Sec. Admin.*, 321 F. App'x 134, 135 (3d Cir. 2009). "Under the harmless error rule, an error warrants remand if it prejudices a party's 'substantial rights.' An error implicates substantial rights if it likely affects the outcome of the proceeding, or likely affects the 'perceived fairness, integrity, or public reputation of [the] proceedings.'" *Hyer v. Colvin*, 72 F. Supp. 3d 479, 494 (D. Del. 2014).

In this case, entirely aside from the ALJ's determination that Dr. Schachter's opinion deserved no weight because it claimed that Passaretti was disabled at a

time when he earned more than $267,000, this medical opinion was substantially undermined in at least three other material ways. First, the opinion was expressed in a check block form, which is "weak evidence at best." *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993). In addition, this statement was inconsistent with the law of this case, as reflected in the prior *res judicata* finding that Passaretti did not suffer from a disability prior to August of 2013. Finally, this assertion was contradicted by Passaretti himself, who alleged in his initial disability application an onset of disability in 2011, not 2009 as claimed by Dr. Schachter. Given these other, independent grounds for discounting this particular medical opinion, we find that any alleged failure by the ALJ to further explore Passaretti's contention that he received a nearly quarter million dollar subsidy from his former employer was, at most, harmless error.

In sum, the ALJ's assessment of the evidence in this case complied with the dictates of the law and was supported by substantial evidence. This is all that the law requires, and all that a claimant like Passaretti can demand in a disability proceeding. Thus, notwithstanding Passaretti's argument that this evidence could have been further explained, or might have been viewed in a way which would have also supported a different finding, we are obliged to affirm this ruling once we find that it is "supported by substantial evidence, 'even [where] this court acting *de novo* might have reached a different conclusion.'" *Monsour Med. Ctr. v.*

*Heckler,* 806 F.2d 1185, 1190–91 (3d Cir. 1986) (quoting *Hunter Douglas, Inc. v. NLRB,* 804 F.2d 808, 812 (3d Cir. 1986)). Accordingly, under the deferential standard of review that applies to appeals of Social Security disability determinations we conclude that substantial evidence supported the ALJ's evaluation of this case. Therefore, we will affirm this decision, direct that judgment be entered in favor of the defendant, and instruct the clerk to close this case.

An appropriate order follows.

So ordered this 10th day of July, 2018.


/s/ *Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge